IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON WHITE** : | | **CIVIL ACTION** |
| *Plaintiff* : | | |
| : | | **NO. 20-2928** |
| **v.** : | | |
| : | | |
| **TRAVELERS INSURANCE CO.,** *et al.* : | | |
| *Defendants* : | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                         DECEMBER 7, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

After allegedly sustaining serious injuries in a motor vehicle accident, Plaintiff Sharon White filed a complaint against Defendant Travelers Insurance Co. ("Travelers") seeking underinsured motorist ("UIM") benefits under the terms of a Travelers insurance policy ("Travelers Policy") and a claim for bad faith.[1] [ECF 1]. At the time of the accident, Plaintiff was a passenger in a vehicle insured by Travelers.

Travelers moves for dismissal, seeking to enforce its written demand for arbitration of the UIM claim under the terms of the Travelers Policy. Travelers also moves to dismiss the bad faith claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that Plaintiff has failed to plead facts sufficient to plausibly show that Travelers either unreasonably denied her benefits or acted with knowing or reckless disregard in denying her benefits. [ECF 8]. In her response, Plaintiff argues that the specific language in the Travelers Policy clause renders arbitration permissive, rather than mandatory, after

---

[1]   Plaintiff also filed a claim against Defendant Main Street America Protection Insurance Co., who did not move to dismiss the complaint.

a party makes a written demand to arbitrate, and that the complaint contains sufficient facts to plausibly plead a bad faith claim. [ECF 11].

For the reasons set forth herein, Defendant's motion to dismiss is granted. Accordingly, Plaintiff's bad faith claim is dismissed, and her UIM claim is stayed pending arbitration.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all relevant and pertinent factual allegations in the complaint and construe these facts in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The relevant allegations in the complaint are summarized as follows:

>In December 2017, Plaintiff was involved in a motor vehicle accident while riding as a passenger in a vehicle owned by her husband and driven by her daughter. [Compl., ECF 1 at ¶¶ 19, 28]. The accident was caused by another driver, Christopher Scaripello. [*Id.* at ¶ 17]. Plaintiff sustained serious injuries and estimates her medical bills to be approximately $427,546.00. [*Id.* at ¶ 64]. At the time of the accident, Plaintiff's husband's vehicle was insured by Travelers under a policy which provided $100,000.00 of coverage per person, per accident. [*Id.* at ¶ 29]. Scaripello's insurance policy provided $50,000.00 of coverage per covered person. [*Id.* at ¶ 34]. In November 2019, Plaintiff settled with Scaripello's insurance company, with Travelers' consent, and informed Travelers that she intended to file a claim for UIM benefits under the Travelers Policy. [*Id.* at ¶¶ 37-39].
>
>On December 5, 2019, Plaintiff sent Travelers a written demand for the UIM policy limits, enclosed her relevant medical documentation, and requested a response within thirty days. [*Id.* at ¶ 51]. Plaintiff received no response to the initial demand and followed up with Travelers on January 6, 2020, and February 6, 2020. [*Id.* at ¶¶ 52-54]. On February 6, 2020, an adjuster for Travelers advised Plaintiff's counsel that Travelers did not agree with Plaintiff's valuation of her injuries and medical bills. [*Id.* at ¶ 54]. On that same day, Plaintiff's counsel also requested a copy of the Travelers Policy, which Travelers initially refused to provide, but eventually sent on March 18, 2020. [*Id.*]. Thereafter, Plaintiff made additional requests for documentation relevant to the UIM claim to which Travelers never responded. [*Id.* at ¶¶ 58-62]. Specifically, Plaintiff contends that Travelers never provided her with (1) a written explanation for the delay in investigating her UIM claim, (2) any indication of when a decision on the claim might be reached, or (3) any written explanation on the status of her claim. [*Id.* at ¶¶ 67-69]. On May

26, 2020, Travelers made a written demand for arbitration of the UIM claim pursuant to the Travelers Policy. [*Id.* at ¶ 62].

The Travelers Policy provides, in its relevant section, that if the parties do not agree on the legal liability of the underinsured vehicle or the "amount of damages sustained" by the insured, "[e]ither party may make a written demand for arbitration." [ECF 1-2, Ex. A, at 20]. The policy further provides that in the "event that a valid written demand for arbitration is made, each party will select an arbitrator[.]" [*Id.*].

**DISCUSSION**

The issues before this Court are: (1) whether Plaintiff's UIM claim must be arbitrated; and (2) whether Plaintiff's bad faith claim should be dismissed under Rule 12(b)(6). Each claim will be addressed in turn.

### *1. Arbitration of UIM Claim*

Travelers argues that it made a written demand for arbitration under the terms of the Travelers Policy and, therefore, Plaintiff's UIM claim must be arbitrated. [ECF 8]. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 104 (3d Cir. 2000). Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). Because arbitration is a matter of contract, Section 2 "requires courts to enforce [arbitration agreements] according to their terms." *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

Before enforcing an arbitration agreement, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2000). In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Throughout the court's inquiry, there is a presumption in favor of arbitrability. *Trippe*, 401 F.3d at 532. If the court finds the arbitration agreement valid and enforceable, the parties thereto are entitled to a stay pending arbitration. 9 U.S.C. § 3. The FAA requires a stay even when a party moves to dismiss. *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 237 n.2 (3d Cir. 2012).

Here, Plaintiff does not contest either that the Travelers Policy contains a valid arbitration clause or the overall enforceability of the Travelers Policy under Pennsylvania law. Based on this concession and after a careful review, this Court finds that the Travelers Policy contains a valid arbitration provision. The parties' disagreement centers, however, on the interpretation of the arbitration provision itself. On the one hand, Plaintiff argues that the arbitration provision is permissive, not mandatory, because it states that either party "may" make a written demand for arbitration. On the other hand, Travelers argues that arbitration is mandatory once a demand is made for arbitration and that Plaintiff's interpretation, if accepted, would render the arbitration provision meaningless.

Pennsylvania courts have addressed this precise interpretation issue and have "repeatedly rejected" the argument, advanced by Plaintiff, that "the use of the word 'may' automatically renders an arbitration clause permissive." *Brown v. City of Philadelphia*, 2010 WL 4484630, *5 (E.D. Pa. Nov. 9, 2010) (relying on *D & H Distrib. Co. v. Nat'l Union Fire Ins.*, 817 A.2d 1164,

4

1169 (Pa. Super. Ct. 2003)).  The arbitration provision in *D & H Distrib. Co.* was similar to the provision at issue here, providing that if the amount of damages was disputed, "either party may make a written demand for arbitration" and that "[i]n this event, either party will select an arbitrator." *D & H Distrib. Co.*, 817 A.2d at 1169.  The Pennsylvania Superior Court clarified that it does not distinguish between "may" or "shall" in this context, but generally recognizes that "the language permitting either party to demand arbitration operates to require the parties to submit to arbitration, as it clearly demonstrates that the parties contemplated the use of arbitration proceedings as the forum for resolution of disputes." *Id.*  Rather, the use of "may" shows that the parties "entered into an agreement to arbitrate disputes at either party's choosing" and that either party may choose to abandon their claim rather than arbitrate.  *Id.*; *see also United Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir. 1979) (holding provision that parties "may" demand arbitration rendered arbitration mandatory).  Therefore, once a valid written demand is made, the claim must be arbitrated.  *See D & H Distrib. Co.*, 817 A.2d at 1170 (holding clause made arbitration "compulsory at the request of either party").  Here, since Travelers made a written demand for arbitration of her UIM claim, the demand renders arbitration mandatory.[2]

Having established that a valid and mandatory agreement to arbitrate exists, this Court also finds that "the particular dispute falls within the scope of the agreement."  *See Trippe*, 401 F.3d at 533.  Under the Travelers Policy, the arbitration provision may be invoked when the parties disagree as to the "amount of damages sustained" by the insured.  Travelers expressed to Plaintiff's counsel that it did not agree with Plaintiff's valuation of her damages and made a written demand

---

[2]   Notably, even the cases Plaintiff cites affirm, rather than undermine, this conclusion.  *See Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004) (holding "clear unambiguous" language should be given full effect, thus, identical language requires arbitration upon a party's written demand, but a party is not required to make a demand in the first place); *Hankin v. Graphic Technology Inc.*, 11 Pa. D. & C. 5th 460, 475-76 (Pa. Com. Pl. 2010) (holding arbitration provision using "may" was permissive in the sense that a party need not invoke it but, if invoked, arbitration becomes mandatory).

5

to arbitrate the claim.  Since this is clearly a dispute as to the amount of damages sustained, it falls squarely within the scope of the arbitration provision in the Travelers Policy.  Therefore, Plaintiff's UIM claim must be arbitrated, and her coverage claim is stayed pending arbitration.

### 2. Bad Faith Claim

Defendant moves to dismiss Plaintiff's bad faith claim for failure to state a claim under Rule 12(b)(6).  In evaluating Defendant's 12(b)(6) motion, this Court must "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id*. (citation and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Plaintiff asserts that Travelers' handling of her UIM claim constituted bad faith, entitling her to damages under 42 Pa. Cons. Stat. § 8371.  Plaintiff contends that Travelers acted in bad faith by: (1) failing to promptly and reasonably determine the applicability of benefits; (2) failing to pay benefits or settle her UIM claim; (3) unreasonably delaying payment; (4) failing to provide a copy

of the Travelers Policy when requested; (5) failing to respond to multiple attempts at communication; (6) unreasonably delaying evaluation of her claim; and (7) violating the Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1 *et seq.*, and the Unfair Claims Settlement Practice ("UCSP") Guidelines, 31 Pa. Code § 146.1 *et seq.*, by failing to complete claim investigation within thirty days or, if unreasonable, to provide a written explanation and an expected date of completion every forty-five days thereafter.  In its motion to dismiss, Travelers argues that Plaintiff's complaint "constitutes nothing more than a disagreement over the value of Plaintiff's UIM claim" and sets forth bare-bones, conclusory allegations without sufficient facts; Travelers further argues that an insurer's decision "not to immediately pay policy limits" does not, in itself, amount to bad faith.  [ECF 8 at 11].

In *Rancosky v. Washington National Insurance Company,* 170 A.3d 364, 365 (Pa. 2017), the Pennsylvania Supreme Court adopted the two-part test for proving a statutory bad faith claim previously outlined in *Terletsky v. Prudential Property & Casualty Insurance Company,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  The test requires that a plaintiff show "that (1) the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky*, 170 A.3d at 365; *see also Purcell v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 425005, *4 (E.D. Pa. Feb. 10, 2012) (considering *Terletsky* test in deciding motion to dismiss).  The analysis of whether an insurer has acted in bad faith is "fact specific and depend[s] on the conduct of the insurer *vis á vis* the insured."  *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1149 (Pa. Super. Ct. 2013) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142–1143 (Pa. Super. Ct. 2006)).

The first element—the lack of reasonable basis to deny benefits—has been interpreted to cover a range of insurer conduct.  Pennsylvania courts recognize that bad faith may extend to an

insurer's lack of good faith investigation or failure to communicate with the claimant regarding UIM claims. *Grossi*, 79 A.3d at 1149. Bad faith may also exist where the insurer delayed in handling the insured's claim. *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 623 (M.D. Pa. 2015); *see also Solano-Sanchez v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 405606, *5 (E.D. Pa. Jan. 24, 2020). However, post-*Terletsky*, alleged violations of the UIPA or UCSP cannot *per se* establish bad faith and have not been considered by Third Circuit courts. *See, e.g.*, *Leach v. Nw. Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008) (holding that "insofar as [plaintiff's] claim for bad faith was based upon an alleged violation of the UIPA, it failed as a matter of law."); *Dinner v. U.S. Auto. Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir. 2002) (holding that only the *Terletsky* test, not alleged UIPA or USCP violations, is relevant in evaluating bad faith claims); *Watson v. Nationwide Mut. Ins. Co.*, 2011 WL 4894073, at *4 (E.D. Pa. Oct. 12, 2011) (observing that, since the current bad faith standard was established in *Terletsky*, "courts in the [Third] circuit have…refused to consider UIPA violations as evidence of bad faith.").

The second element of a bad faith claim—the insurer's knowledge or reckless disregard of its lack of a reasonable basis for denying (or delaying) the claim—is a higher standard than "mere negligence or bad judgment." *Terletsky*, 649 A.2d at 688. If pleading bad faith delay, the mere existence of the delay itself is insufficient. *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 5325340, *7 (M.D. Pa. Oct. 20, 2014) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 589 (E.D. Pa. 1999). Rather, a court must look to facts from which it can infer the defendant insurer "knew it had no reason to deny a claim; if [the] delay is attributable to the need to investigate further or even simple negligence, no bad faith has occurred." *Id.*; *see also Grossi*, 79 A.3d at 1152 (affirming finding of bad faith delay when there existed, *inter alia*, "inexcusable periods of inactivity" and "inadequate communication"). In cases involving delay or failure to

investigate or communicate, courts have found the length of the delay relevant to an inference of knowledge or reckless disregard. *See*, *e.g.*, *id.* (delay of more than one year to investigate UIM claim); *Solano-Sanchez*, 2020 WL 405606, at *5 (delay of more than two years to investigate or make any determination in UIM claim).

Consistent with the case law cited above, Plaintiff has pled facts sufficient to show the first element of her bad faith claim, that Travelers lacked a reasonable basis for denying her claim. As noted above, this element can be met with allegations that an insurer unreasonably delayed in adjudicating an insurer's claim. *Grossi*, 79 A.3d at 1154. Here, Plaintiff has alleged that during the nearly six months between Plaintiff initially filing her UIM claim and Travelers making a written arbitration demand, Plaintiff's counsel attempted to communicate with Travelers on at least five separate occasions for any update on the status of Plaintiff's claim. Travelers appears to have responded once in February 2020 to dispute Plaintiff's damages valuation, then three months later made its arbitration demand, but otherwise did not respond to any of Plaintiff's questions or requests for information. These facts are sufficient to allege the first element of bad faith. Thus, Plaintiff's averments that Travelers did not respond for six months to her communication regarding her claim and delayed providing her requested provisions of the Travelers Policy are facts sufficient to plausibly allege an unreasonable delay to investigate and settle Plaintiff's claim.

Plaintiff has not, however, pled facts sufficient to plausibly allege the second element of a bad faith claim, Travelers' knowledge or reckless disregard of its lack of a reasonable basis for denying or delaying the payment of the claim. In bad faith cases premised on an insurer's delay and failure to communicate, courts have generally only inferred plausible knowledge or reckless disregard where the time periods of delay were much longer than six months. *See*, *e.g.*, *Grossi*, 79 A.3d at 1152 (one-year delay); *Solano-Sanchez*, 2020 WL 405606, at *5 (two-year delay). Here,

the time lapse before Travelers' acted on Plaintiff's claim by seeking arbitration was roughly six months. Further, nothing in Plaintiff's complaint attributes this time period to Travelers' knowledge or reckless disregard of a reasonable basis for denying (or delaying) the claim, as opposed to "mere negligence" or even an actual need to investigate. Without a longer delay more consistent with the delays established in the aforementioned precedent, or other factual allegations from which this Court could infer that Travelers acted with knowledge or reckless disregard of the unreasonableness of its actions, Plaintiff has not pled facts sufficient to plausibly allege the second element of her bad faith claim. Therefore, Plaintiff's bad faith claim is dismissed.

**CONCLUSION**

For the reasons set forth, Travelers' motion to dismiss is granted and Plaintiff's bad faith claim is dismissed. Plaintiff must arbitrate her UIM claim. Accordingly, Plaintiff's action against Travelers is stayed pending arbitration. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.